*11754*
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ASIA PROJECT SERVICES LTD.,

**Case No. 08 CV 3750 - Judge Holwell**

Plaintiff,

- against -

**VERIFIED COMPLAINT**

PRAXAIR INDIA PRIVATE LIMITED,
AHLERS CHINA &
AHLERS INDIA PVT. LTD.,

Defendants.
-----------------------------------------------------x

Plaintiff, **ASIA PROJECT SERVICES LTD**., (hereafter "**ASIA PROJECT SERVICES** "), by its attorneys, **JUNGE & MELE, LLP**, complaining of the Defendants, **PRAXAIR INDIA PRIVATE LIMITED (**hereafter **"PRAXAIR INDIA")**, **AHLERS CHINA** (hereafter "**AHLERS CHINA**") and **AHLERS INDIA PVT LTD.** (hereafter **"AHLERS INDIA")**, alleges as follows:

1. This is a case of admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1), and an action in aid of foreign arbitration pursuant to the Arbitration Act, 9 U.S.C. §1, *et seq*., and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201, *et seq*., and a maritime claim within the meaning of Rules 9(h) and 38(e) of the Federal Rules of Civil Procedure.

2. At all times relevant, Plaintiff, **ASIA PROJECT SERVICES**, was a foreign business corporation with an office located at c/o Asia Project Chartering Pte. Ltd., 70 Shenton Way, #14-01 Marina House, Singapore 079118.

3. At all times relevant, Defendant, **PRAXAIR INDIA**, was a foreign business corporation with an office located at Praxair House, No. 8, Ulsoor Road, Bangalore - 560 042, India, and is not present within this District, or any nearby district, pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

4. At all times relevant, Defendant, **AHLERS CHINA**, was a foreign business company located at Alison International Tower, C-E, 8th Floor, 8 Fuyou Rd., Huangpu District, CN-200010 Shanghai, China, and is not present within this District, or any nearby district, pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

5. At all times relevant, Defendant, **AHLERS INDIA**, was a foreign business corporation, with its place of business located at 1/1 Camac Street, 5th Floor, Suite 503, IN-700016 Kolkatta, India, and is not present within this District, or any nearby district, pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

6. On August 31, 2007, Asia Project Chartering Pte. Ltd., as agent for **ASIA PROJECT SERVICES**, the disponent owner of the vessel ***CEC CENTURY*** (hereafter the "Vessel"), entered into Booking Note with **PRAXAIR INDIA**, as Merchant, via **AHLERS INDIA**, as agent, to transport on the Vessel a cargo of about 6,000 cubic meters consisting of equipment for an air separation plant, from the port of Shanghai, China, to the port of Haldia, India, at a freight rate stated therein, and a daily detention

and/or demurrage rate of $17,500 per day pro-rated ("pdpr").  A true copy of the Booking Note is annexed hereto as **EXHIBIT "1."**

7. The relevant clauses of the Booking Note are as follows:

"Daily Detention and/ or demurrage rate              USD 17,500 pdpr

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof, which shall prevail over any previous arrangements and which shall in turn be superseded (except as to dead freight) by the terms of the Bill of Lading.

**1.     Definition**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**4.     Law and Jurisdiction**
Any dispute arising under or in connection with this Bill of Lading shall be subject to the exclusive jurisdiction of the High Court of Justice, London, and English law shall apply except as provided elsewhere herein.

**10.    Loading and Discharging**

(a) Loading and discharging of the cargo shall be arranged by the Carrier or his agent unless otherwise agreed.
. . . . . .
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port... If the Merchant or his Agent fails to take delivery of the cargo as fast as the vessel can discharge, the Merchant shall be liable to the Carrier of any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15,000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.  All delivery takes place at the end of the vessel's hook unless otherwise specified.

**SPECIAL CLAUSES**
**A.  Detention**
In addition to Clauses 10(d) and (e), detention shall also be paid, at the same rate, for any delay in waiting for berth at or off the port, including time lost due to swell or tide..."

8. In addition, Bills of Lading were issued for the ocean carriage of the cargo naming **AHLERS CHINA**, as Shipper, **AHLERS INDIA**, as Consignee, and Asia Project Chartering Pte. Ltd., as agent for the Carrier, **ASIA PROJECT SERVICES**; the reverse of the Bills of Lading were endorsed by **AHLERS INDIA**. True copies of the relevant Bills of Lading, "SHAHAL 01" and "SHAHAL 02," are attached hereto as **EXHIBITS "2"** and **"3,"** respectively.

9. Following the loading of the cargo in Shanghai, the Vessel proceeded to the discharge port of Haldia, where the Master tendered the Vessel's Notice of Readiness to discharge cargo at 1925 hours on September 30, 2007; however, the Vessel remained at the anchorage awaiting receiver's instructions until 1420 hours on October 8, 2007, a duration of 7.788 days. A true copy of the agreed Statement of Facts is annexed hereto as **EXHIBIT "4."**

10. The delay waiting to berth falls within the express Special Clause A, and as such, the Merchant/Receiver is liable for any delay waiting to berth at or off the discharge port at the rate of $17,500 per day which amounts to $136,290.00 for the 7.788 days the Vessel was delayed and detained; further, Clause 1 of the Booking Note and Bills of Lading contemplates that a claim for detention may be made against Praxair India (as Merchant), Ahlers India (as Consignee) and Ahlers China (as Shipper), and under Special Clause A, the Merchant, Shipper and Consignee shall be liable for "detention [arising from] . . . any delay in waiting for berth at or off the port, including time lost due to swell or tide . . ." After due demand, Defendants have not remitted to Plaintiff payment for the

said detention. A true copy of the Plaintiff's detention Invoice, dated November 15, 2007, is annexed hereto as **EXHIBIT "5."**

12. Plaintiff expects to recover from Defendants in legal proceedings in the High Court of Justice, London, under English law, the estimated amount of $186,290.00, calculated as follows: on its principal claim, the amount of $136,290.00; and on its claim for legal expenses and interest approximately $50,000.00.

13. Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, assets within this District consisting of cash, funds, freight, hire, or credits including but not limited to electronic fund transfers in the hands of garnishees in this District, including but not limited to the following:

1. Citibank, N.A.
2. Bank of America, N.A.
3. Bank of New York
4. Credit Suisse
5. JPMorgan Chase Bank
6. Mashreq Bank
7. HSBC (USA) Bank
8. BNP Paribas
9. ABN AMRO Bank
10. Standard Chartered Bank
11. UBS, A.G.
12. Barclay's Bank
13. Wachovia Bank
14. Deutsche Bank and/or Deutsche Bank Trust Co. Americas
15. American Express Bank
16. Bank of Tokyo Mitsubishi UFJ

**WHEREFORE,** Plaintiff prays for the following relief:

1. That process in due form of law according to the practice of this Court be issued against Defendants and that Defendants be cited to appear and answer the allegations herein;

2. That since Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendants' tangible or intangible property or any other funds held by garnishees including but not limited to the aforementioned garnishees in the District which are due and owing or otherwise the property of Defendants up to the amount of $186,290.00, to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in this Verified Complaint.

3. That such property attached pursuant to the Processes of Maritime Attachment and Garnishment remain sequestered to serve as security for the payment of plaintiff's claims as they may be embodied in any award issued out of arbitration in London.

4. That Plaintiff have such other and further and different relief as may be just and proper, including judgment against Defendants, along with interest, costs and disbursements as allowable under law.

Dated in the City of New York on April 21, 2008

Respectfully submitted,

JUNGE & MELE, LLP
*Attorneys for Plaintiff*

/s/ Peter A. Junge
______________________
Peter A. Junge (PJ-0745)
29 Broadway
New York, NY 10006
(212) 269-0061

*11754 Verified Complaint.wpd*

VERIFICATION

PETER A. JUNGE declares as follows:

1. I am a member of the bar of this Honorable Court and of the firm of Junge & Mele, LLP, attorneys for Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not the Plaintiff is that Plaintiff is a foreign corporation with no officers or directors within this jurisdiction.

4. The source of my information and belief are documents provided to me, statements made to me by representatives of Plaintiff, and publicly available documents concerning the Defendants on the internet.

5. I declare under penalty of perjury that the foregoing is true and correct.

Dated in the City of New York on April 21, 2008

/s/ Peter A. Junge

______________________
Peter A. Junge

BOOKING NOTE

Asia Project Chartering Pte Ltd

Singapore

CSC Century or sub

Bangalore

India

- Cargo: abt 6000 cbm being 2nd, 4th and 5th shipment as per packing lists

Additional clauses

- Any [illegible] ng/loading, the other terminal charges, wharfage, dues duties and taxes calculated [illegible] and/or freight to be for merchant's account at both ends
- Carrier's agents both ends
- 2.5 pct total commission
- Carrier's ISPS clause to apply

| | |
|---|---|
| USD 127.50 w/m - basis liner terms hook/hook Freight 100% payable into Carrier's nominated bank account after completion of loading and prior signing/releasing original bill of lading | See freight details<br>USD 17,500 pdpr |

- Shipment under/on deck; on deck at merchant's risk and expense
- Charterers agree that the cargo loaded on CSC Colembourg is transhipped in Singapore to the CSC Century, owners to cover transhipment costs
- Charterers agree to pay the full detention invoice for CSC France without further delay
- Previously signed booking note for 3rd shipment is hereby null and void. Charterers confirm that there will be no claim whatsoever towards owners with regards to shipment no. 3
- Owners confirm a special rebate of usd 70,000 lumpsum

For and On Behalf of M/s. Praxair India Pvt Ltd

As per their Authorisation Letter

EXHIBIT "1"

# BILL OF LADING TERMS AND CONDITIONS

**1. Definition**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability under the Contract**
(a) Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there are no such enactments compulsorily applicable, the terms of Articles I-VIII inclusive of said Convention shall apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading.
Where the Hague Rules or part of them or the Hague-Visby Rules apply to carriage under this contract, the applicable rules, or part of them, shall likewise apply to the period before loading and after discharge where the Carrier (or his agent) have custody or control of cargo.
Unless otherwise provided herein, the Carrier shall in no case be responsible for loss of or damage to deck cargo and/or live animals.
Unless otherwise stated herein, the Protocol signed at Brussels on 21st December 1979 (the SDR Protocol 1979) shall apply (b) The carrier shall under no circumstances be liable for consequential losses.
If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, Additional Clauses.

**4. Law and Jurisdiction**
Any dispute arising under or in connection with this Bill of Lading shall be subject to the exclusive jurisdiction of the High Court of Justice, London, and English Law shall apply except as provided elsewhere herein.

**5. The Scope of Carriage**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading discharging or other cargo operations and maintenance of vessel and crew. The carrier shall have the liberty of restowing the cargo and loading and discharging other cargoes for the account of other Merchants for ports enroute or not enroute to ports enroute or not enroute.

**6. Substitution of Vessel**
The Carrier shall be at liberty to carry the cargo or part thereof to the port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment**
The Carrier shall be at liberty to tranship land and store the cargo either on shore or afloat and reship and forward the same to the port of discharge at Carrier's expense but at Merchant's risk.

**8. Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the risk and account of the Merchant.

**9. Liability for Pre- and On-Carriage**
When the Carrier arranges pre-carriage of the cargo from a place other than the vessel's port of loading or on-carriage of the cargo to a place other than the vessel's port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the port of loading and the port of discharge even though the freight for the whole carriage has been collected by him.

**10. Loading and Discharging**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent unless otherwise agreed.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the vessel is ready to load and as fast as the vessel can receive, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for dead freight and/or any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15.000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction.
If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15,000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
All delivery takes place at the end of the vessel's hook unless otherwise specified.
(f) The Merchants shall be responsible for providing all necessary equipment for loading and discharging, including spreader bars, lifting frames, slings and saddles.
(g) The securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative to be for Merchant's account.
(h) The Merchant shall accept his reasonable proportion of unidentified loose cargo.
(i) Cargo contracted to be carried on terms free in/liner out or liner in/free out, shall be loaded and/or discharged at the costs, expense, risk and responsibility of the Merchant, who shall be liable to the Carrier for the actions, omissions and negligence of the stevedores, whom the Merchant shall appoint and pay for. Laytime as per Booking Note. Demurrage shall be paid at the rate of USD15,000 per day (or such other sum as is stated on the face of the Bill of Lading).
(j) Notice of Readiness may be tendered on arrival, at any time, day or night, all weekend days and whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not.

**11. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines**
(a) Freight, whether paid or not, shall be considered as fully earned and due upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing on board, repairing damage to and replacing of packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons. The Merchant shall be specifically liable for all costs, expenses, losses and liabilities incurred due to non-approved or contaminated or infested dunnage supplied by Merchants including all costs of transporting the cargo to another port, if required.
(c) The Merchant shall be liable for any dues, duties, taxes and charges that under any denomination may be levied, inter alia, on the basis of freight, weight or measurement of cargo or tonnage of the vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and or losses that the Carrier, vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.
(f) Any additional insurance premium charged by vessel's underwriters for breaching trading limitations (IWL) or war risk exclusions to be for Merchant's account.

**12. Lien**
The Carrier shall have a lien on all cargo for any amount due (including freight, detention, demurrage, and other costs or expenses) under this Contract and other contracts between the Merchant and the Carrier and costs of recovering the same (including attorney's fees) and shall be entitled to sell the cargo privately or by auction to satisfy any claims or liens at the specified discharge port or other port.

**13. General Average and Salvage**
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**14. Both-to-Blame Collision Clause (This clause to remain in force even if unenforceable in the Courts of the United States of America)**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**15. Government Directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any cargo on board to risk of seizure or damage or delay in consequence of war, warlike conditions, blockade, riots, civil commotion or piracy, or any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts (whether on board or on shore), difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Defenses and Limits of Liability for the Carrier, Servants, Agents and Managers**
(a) It is hereby expressly agreed that no servant, agent or manager of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant, agent or Manager of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant, agent or manager of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**17. Stowage**
(a) The Carrier shall have the right to stow by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**18. Packaging**
The Merchant is responsible for providing cargo that is properly packed and internally secured for ocean transportation, and that all centres of gravity are marked, proper skids are attached and, if required, all cradles used for securing the cargo are fit for the purpose and the cargo is properly secured within the cradles. The Merchant shall fit the cargo and/or cradles as appropriate with suitable lifting lugs and sufficient lashing points for the cargo and/or cradle to be properly secured. If cargo is not flat at the bottom, the Merchant is to provide a detailed footprint sketch prior to loading. Any special dunnaging is to be for the Merchant's account.

**19. Shipper-Packed Containers, Trailers, Transportable Tanks, Flats, Pallets and similar articles**
The Carrier shall not be responsible for loss of or damage to contents of a container whatsoever when the container has not been filled, packed or stowed by the Carrier. The Merchant shall cover any loss, damage or expense incurred by the Carrier when caused by negligent filling, packing or stowing of the container, or the contents being unsuitable for carriage in a container. The same applies with respect of trailers, tanks, flats, pallets and other similar articles of transport used to consolidate goods.

**SPECIAL CLAUSES**

**A. Detention**
In addition to Clauses 10(d) and (e), detention shall also be paid, at the same rate, for any delay in waiting for berth at or off the port, including time lost due to swell or tide. Each Merchant shall be liable towards the Carrier for a proportionate part of the total detention due based upon its total payable freight on the cargo.
No Merchant shall be liable for detention arising only in connection with cargo belonging to other Merchant.

**B. U.S. Trade, Period of Responsibility**
(i) In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading, and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody. For US trades, the terms on file with the U.S. Federal Maritime Commission shall apply to such shipments.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit.

**C. US Security Clause**
If the vessel calls in the United States, including any US territory, the following provisions shall apply with respect to any applicable regulations or measures: Unless caused by the Carrier's negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant US authorities shall count as time of detention. Any expenses or additional fees relating to the cargo, even if levied against the vessel, that arise out of security measures imposed at the loading and/or discharging port shall be for the Merchants' account.

**ORIGINAL**

# BILL OF LADING

Shipper:
Ahlers China
C-E, 8F, Alison International Tower,
8 Fuyou Rd, Shanghai, 200010, China
Phone: +86 21 63306600

Consignee:
Ahlers India Pvt Ltd.,
1/1 Camac Street
5th Floor, Suite 503
IN-700016 Kolkatta
India.
Phone: +91 3322275156

Notify Party (full style and address)
Same as Consignee

| B/L No.: | Reference No. |
|---|---|
| SHAHAL 01 | |

Vessel
MV CEC CENTURY

Port of loading
SHANGHAI

Port of discharge
HALDIA

**PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER**

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo | Gross weight, kg | Measurement, m³ |
|---|---|---|---|
| | **SAID TO CONTAIN** **13 PKGS Project Cargo** EQUIPMENTS FOR AIR SEPERATION PLANT | **SAID TO WEIGH 252843 KGS** | **SAID TO MEASURE 1707.097 CBM** |

LN2 Driox Pump Skid
LO2 Truck Fill Pump Skid
M.D.- 0900 Chiller
M.D.- 0910 Air Purifier
M.D.- 0920 Cold Box Vessel
Oxygen Pump Duct
Cold Box FBM #1 (20 Ft container)
LN2 Truck Fill Pump Skid
PHX Packages
Argon Pump Duct
Turbine Duct
MD Platform and silencers
Switch Gear Encl

M/R SHAHAL004: ENCLOSURE 5202162.O5.04503/TATA // REMARK: 2 PCS ILLUMINATING LAMPS ARE BORKEN,DOOR HAND LOCK BROKEN, TOP OF UNIT (ROOF) BENDED
M/R SHAHAL005: REMARKS: ENCLOSURE 52002162.O5.04503/TATA, ENCLUSURE 520, DRAWING PIPE BENDED, TOP OF UNIT (ROOF) BENDED.
M/R SHAHAL006: SWITCHGEAR 52002095.0504503/DURGAPICR, DRAINING PIPE BROKEN, ILLUMINATING LAMP BROKEN, TOP OF UNIT (ROOF) BENDED
M/R SHAHAL008: REMARKS: PROJECT #20916 G MD-0900 CHILLER, TOP SIDE PROMINENT PARTS (TWO) WERE BENTED

4 packages transhipped via Singapore carried on deck at shippers / cargo interests / receivers risk and expense without vessels/carriers/owners liability for any loss and or damage howsoever caused.

**SHIPPED** on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated above and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight as indicated to the right plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.
One original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void.
IN WITNESS whereof the Carrier, Master or their Agent has signed the number of original Bills of Lading stated below right, all of this tenor and date.

| Shipper's declared value | Declared value charge |
|---|---|
| XXX | XXX |

Freight details and charges
FREIGHT PREPAID

Daily detention rate (Special clause A) / Demurrage (clause 10)
As per BN dd 31st August 2007

Special terms as per Booking Note dated:
Freight Payable as per Booking Note dd 31st August 2007

Carrier's name/principal place of business
Asia Project Services LTD

| Date shipped on board | Place and date of issue |
|---|---|
| 15 September, 2007 | Haldia 24.09.2007 |

Number of original Bills of Lading
THREE

Pre-carriage by**
CEC Culembourg
4 units were transhipped via Singapore

Place of receipt by pre-carrier**
Shanghai

Place of delivery by on-carrier**
Haldia

Signature

........................................ Carrier

or, for the Carrier

........................................ as Master
(Master's name/signature)

Marcons Maritime Pvt Ltd ........................................ as Agents
(Agent's name/signature)

[Stamp: MARCONS MARITIME PVT. LTD. KOLKATA]

*As defined hereinafter (Clause 1)
**Applicable only when pre-/on-carriage is arranged in accordance with Clause ...

EXHIBIT "2"

# BILL OF LADING TERMS AND CONDITIONS

**1. Definition**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability under the Contract**
(a) Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there are no such enactments compulsorily applicable, the terms of Articles I-VIII inclusive of said Convention shall apply.
In trades where the International Brussels Convention of 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading.
Where the Hague Rules or part of them or the Hague-Visby Rules apply to carriage under this contract, the applicable rules, or part of them, shall likewise apply to the period before loading and after discharge where the Carrier (or his agent) have custody or control of cargo.
Unless otherwise provided herein, the Carrier shall in no case be responsible for loss of or damage to deck cargo and/or live animals.
Unless otherwise stated herein, the Protocol signed at Brussels on 21st December 1979 (the SDR Protocol 1979) shall apply.
(b) The carrier shall under no circumstances be liable for consequential losses.
If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, Additional Clause.

**4. Law and Jurisdiction**
Any dispute arising under or in connection with this Bill of Lading shall be subject to the exclusive jurisdiction of the High Court of Justice, London, and English Law shall apply except as provided elsewhere herein.

**5. The Scope of Carriage**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging or other cargo operations and maintenance of vessel and crew. The carrier shall have the liberty of restowing the cargo and loading and discharging other cargoes for the account of other Merchants for ports enroute or not enroute to ports enroute or not enroute.

**6. Substitution of Vessel**
The Carrier shall be at liberty to carry the cargo or part thereof to the port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment**
The Carrier shall be at liberty to tranship and land and store the cargo either on shore or afloat and reship and forward the same to the port of discharge at Carrier's expense but at Merchant's risk.

**8. Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the risk and account of the Merchant.

**9. Liability for Pre- and On-Carriage**
When the Carrier arranges pre-carriage of the cargo from a place other than the vessel's port of loading or on-carriage of the cargo to a place other than the vessel's port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the port of loading and the port of discharge even though the freight for the whole carriage has been collected by him.

**10. Loading and Discharging**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent unless otherwise agreed.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the vessel is ready to load and as fast as the vessel can receive, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for dead freight and/or any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15,000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction.
If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15,000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
All delivery takes place at the end of the vessel's hook unless otherwise specified.
(f) The Merchants shall be responsible for providing all necessary equipment for loading and discharging, including spreader bars, lifting frames, slings and saddles.
(g) The securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative to be for Merchant's account.
(h) The Merchant shall accept his reasonable proportion of unidentified loose cargo.
(i) Cargo contracted to be carried on terms free in/liner out or liner in/free out, shall be loaded and/or discharged at the costs, expense, risk and responsibility of the Merchant, who shall be liable to the Carrier for the actions, omissions and negligence of the stevedores whom the Merchant shall appoint and pay for. Laytime as per Booking Note. Demurrage shall be paid at the rate of USD15,000 per day (or such other sum as is stated on the face of the Bill of Lading).
(j) Notice of Readiness may be tendered on arrival, at any time, day or night, all weekend days and whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not.

**11. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines**
(a) Freight, whether paid or not, shall be considered as fully earned and due upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing on board, repairing damage to and replacing of packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons. The Merchant shall be specifically liable for all costs, expenses, losses and liabilities incurred due to non-approved or contaminated or infested dunnage supplied by Merchants including all costs of transporting the cargo to another port, if required.
(c) The Merchant shall be liable for any dues, duties, taxes and charges that under any denomination may be levied, inter alia, on the basis of freight, weight or measurement of cargo or tonnage of the vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses that the Carrier, vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.
(f) Any additional insurance premium charged by vessel's underwriters for breaching trading limitations (IWL) or war risk insurance to be for Merchant's account.

**12. Lien**
The Carrier shall have a lien on all cargo for any amount due (including freight, detention, demurrage, and other costs or expenses) under this Contract and other contracts between the Merchant and the Carrier and costs of recovering the same (including attorney's fees) and shall be entitled to sell the cargo privately or by auction to satisfy any claims or liens at the specified discharge port or other port.

**13. General Average and Salvage**
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the saving vessel or vessels belonged to strangers.

**14. Both-to-Blame Collision Clause (This clause to remain in force even if unenforceable in the Courts of the United States of America)**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**15. Government Directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any cargo on board to risk of seizure or damage or delay in consequence of war, warlike operations, blockade, riots, civil commotion or piracy, or any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts (whether on board or on shore), difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Defences and Limits of Liability for the Carrier, Servants, Agents and Managers**
(a) It is hereby expressly agreed that no servant, agent or manager of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant, agent or Manager of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant, agent or manager of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**17. Stowage**
(a) The Carrier shall have the right to stow by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**18. Packaging**
The Merchant is responsible for providing cargo that is properly packed and internally secured for ocean transportation, and that all centres of gravity are marked, proper skids are attached and, if required, all cradles used for securing the cargo are fit for the purpose and the cargo is properly secured within the cradles. The Merchant shall fit the cargo and/or cradles as appropriate with suitable lifting lugs and sufficient lashing points for the cargo and/or cradle to be properly secured. If cargo is not flat at the bottom, the Merchant is to provide a detailed footprint sketch prior to loading. Any special dunnaging is to be for the Merchant's account.

**19. Shipper-Packed Containers, Trailers, Transportable Tanks, Flats, Pallets and similar articles**
The Carrier shall not be responsible for loss of or damage to contents of a container whatsoever when the container has not been filled, packed or stowed by the Carrier. The Merchant shall cover any loss, damage or expense incurred by the Carrier when caused by negligent filling, packing or stowing of the container, or the contents being unsuitable for carriage in a container. The same applies with respect of trailers, tanks, flats, pallets and other similar articles of transport used to consolidate goods.

**SPECIAL CLAUSES**

**A. Detention**
In addition to Clauses 10(d) and (e), detention shall also be paid, at the same rate, for any delay in waiting for berth at or off the port, including time lost due to swell or tide. Each Merchant shall be liable towards the Carrier for a proportionate part of the total detention due based upon total payable freight on the cargo.
No Merchant shall be liable for detention arising only in connection with cargo belonging to other Merchant.

**B. U.S. Trade, Period of Responsibility**
(i) In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody. For US trades, the terms on file with the U.S. Federal Maritime Commission shall apply to such shipments.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD500 per package or customary freight unit.

**C. US Security Clause**
If the vessel calls in the United States, including any US territory, the following provisions shall apply with respect to any applicable regulations or measures:
Unless caused by the Carrier's negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant US authorities shall count as time of detention.
Any expenses or additional fees relating to the cargo, even if levied against the vessel, that arise out of security measures imposed at the loading and/or discharging port shall be for the Merchants' account.

**ORIGINAL**

# BILL OF LADING

| | |
|---|---|
| Shipper: Ahlers China, C-E, 8F, Alison International Tower, 8 Fuyou Rd, Shanghai, 200010, China, Phone: +86 21 63306600 | |
| Consignee: Ahlers India Pvt Ltd., 1/1 Camac Street, 5th Floor, Suite 503, IN-700016 Kolkatta, India. Phone: +91 3322275156 | B/L No.: SHAHAL 02 — Reference No.: <br> Vessel: MV CEC CENTURY |
| Notify Party (full style and address): Same as Consignee | Port of loading: SHANGHAI |
| | Port of discharge: HALDIA |

**PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER**

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo | Gross weight, kg | Measurement, m³ |
|---|---|---|---|
| | SAID TO CONTAIN<br>23 PKGS Project Cargo<br>EQUIPMENTS FOR AIR SEPERATION PLANT | SAID TO WEIGH<br>622843 KGS | SAID TO MEASURE<br>4476.278 CBM |
| M.D.- 0920 Cold Box Vessel | LN2 Truck Fill Pump Skid | | |
| M.D.- 0900 Chiller | LO2 Truck Fill Pump Skid | | |
| M.D.- 0910 Air Purifier | Upper Sec. Column Packages | | |
| M.D.- 0920 Cold Box Vessel | Mid Sec. Column Packages | | |
| Main Cont & QA Encl | Oxygen Pump Duct | | |
| Analyser Encl (Plant 2) | Argon Pump Duct | | |
| Analyser Encl (Plant 3) | Turbine Duct | | |
| Switch Gear Encl #2 Part1 | PHX Package | | |
| Switch Gear Encl #2 Part2 | Lower Sec. Column Packages | | |
| MCC Enclosure Driox | Cold Box FBM #2 (40 FT container) | | |
| MCC Enclosure Driox #1 | M.D.- 0900 Chiller | | |
| | M.D.- 0910 Air Purifier | | |

MR SHAHAL004: ENCLOSURE 5202182.O5.04503/TATA // REMARK: 2 PCS ILLUMINATING LAMPS ARE BORKEN,DOOR HAND LOCK BROKEN, TOP OF UNIT (ROOF) BENDED
MR SHAHAL005: REMARKS: ENCLOSURE 52002182.O5.04503/TATA, ENCLUSURE 620, DRAWING PIPE BENDED, TOP OF UNIT (ROOF) BENDED.
MR SHAHAL006: SWITCHGEAR 52002085.0504503/DURGAPICR, DRAINING PIPE BROKEN, ILLUMINATING LAMP BROKEN, TOP OF UNIT (ROOF) BENDED
MR SHAHAL008: REMARKS: PROJECT #20918 G MD-0900 CHILLER, TOP SIDE PROMINENT PARTS (TWO) WERE BENTED

4 packages transhipped via Singapore and 40 FT container carried on deck at shippers / cargo interests / receivers risk and expense without vessels/carriers/owners liability for any loss and or damage howsoever caused.

**SHIPPED** on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated above and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight as indicated to the right plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.
One original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void.
IN WITNESS whereof the Carrier, Master or their Agent has signed the number of original Bills of Lading stated below right, all of this tenor and date.

| | |
|---|---|
| Shipper's declared value: XXX | Declared value charge: XXX |
| Freight details and charges: FREIGHT PREPAID | |
| Daily detention rate (Special clause A) / Demurrage (clause 10): As per BN dd 31st August 2007 | |
| Special terms as per Booking Note dated: Freight Payable as per Booking Note dd 31st August 2007 | |
| Date shipped on board: 15 September, 2007 | Place and date of issue: Haldia 24.09.2007 |
| Number of original Bills of Lading: THREE | |
| Pre-carriage by**: CEC Culembourg, 4 units were transhipped via Singapore | |
| Place of receipt by pre-carrier**: Shanghai | |
| Place of delivery by on-carrier**: Haldia | |

Carrier's name/principal place of business
Asia Project Services LTD

Signature
.................................................. Carrier
or, for the Carrier
.................................................. as Master
(Master's name/signature)
Marcons maritime Pvt Ltd. .................... as Agents
(Agent's name/signature)

[Stamp: MARCONS MARITIME PVT. LTD. KOLKATA]

*As defined hereinafter (Clause 1)
**Applicable only when pre-/on-carriage is arranged in accordance with...

EXHIBIT "3"

# BILL OF LADING TERMS AND CONDITIONS

**1. Definition**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability under the Contract**
(a) Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply in respect of shipments to which there are no such enactments compulsorily applicable, the terms of Articles I-VIII inclusive of said Convention shall apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading.
Where the Hague Rules or part of them or the Hague-Visby Rules apply to carriage under this contract, the applicable rules, or part of them, shall likewise apply to the period before loading and after discharge where the Carrier (or his agent) have custody or control of cargo.
Unless otherwise provided herein, the Carrier shall in no case be responsible for loss of or damage to deck cargo and/or live animals.
Unless otherwise stated herein, the Protocol signed at Brussels on 21st December 1979 (the SDR Protocol 1979) shall apply.
(b) The carrier shall under no circumstances be liable for consequential losses.
If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, Additional Clauses.

**4. Law and Jurisdiction**
Any dispute arising under or in connection with this Bill of Lading shall be subject to the exclusive jurisdiction of the High Court of Justice, London, and English Law shall apply except as provided elsewhere herein.

**5. The Scope of Carriage**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging or other cargo operations and maintenance of vessel and crew. The carrier shall have the liberty of reloading the cargo and loading and discharging other cargoes for the account of other Merchants for ports enroute or not enroute to ports enroute or not enroute.

**6. Substitution of Vessel**
The Carrier shall be at liberty to carry the cargo or part thereof to the port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment**
The Carrier shall be at liberty to tranship, land and store the cargo either on shore or afloat and reship and forward the same to the port of discharge at Carrier's expense but at Merchant's risk.

**8. Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the risk and account of the Merchant.

**9. Liability for Pre- and On-Carriage**
When the Carrier arranges pre-carriage of the cargo from a place other than the vessel's port of loading or on-carriage of the cargo to a place other than the vessel's port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the port of loading and the port of discharge even though the freight for the whole carriage has been collected by him.

**10. Loading and Discharging**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent unless otherwise agreed.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the vessel is ready to load and as fast as the vessel can receive, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for dead freight and/or any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15,000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction.
If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 15,000 per day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay.
All delivery takes place at the end of the vessel's hook unless otherwise specified.
(f) The Merchants shall be responsible for providing all necessary equipment for loading and discharging, including spreader bars, lifting frames, slings and saddles.
(g) The securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative to be for Merchant's account.
(h) The Merchant shall accept his reasonable proportion of unidentified loose cargo.
(i) Cargo contracted to be carried on terms free in/liner out or liner in/free out, shall be loaded and/or discharged at the costs, expense, risk and responsibility of the Merchant, who shall be liable to the Carrier for the actions, omissions and negligence of the stevedores, whom the Merchant shall appoint and pay for. Laytime as per Booking Note. Demurrage shall be paid at the rate of USD15 000 per day (or such other sum as is stated on the face of the Bill of Lading).
(j) Notice of Readiness may be tendered on arrival, at any time, day or night, at weekends days and whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not.

**11. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines**
(a) Freight, whether paid or not, shall be considered as fully earned and due upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing on board, repairing damage to and replacing of packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons. The Merchant shall be specifically liable for all costs, expenses, losses and liabilities incurred due to non-approved or contaminated or infested dunnage supplied by Merchants including all costs of transporting the cargo to another port, if required.
(c) The Merchant shall be liable for any dues, duties, taxes and charges that under any denomination may be levied, inter alia, on the basis of freight, weight or measurement of cargo or tonnage of the vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and or losses that the Carrier, vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.
(f) Any additional insurance premium charged by vessel's underwriters for breaching trading limitations (IWL) or war risk exclusions to be for Merchant's account.

**12. Lien**
The Carrier shall have a lien on all cargo for any amount due (including freight, detention, demurrage, and other costs or expenses) under this Contract and other contracts between the Merchant and the Carrier and costs of recovering the same (including attorney's fees) and shall be entitled to sell the cargo privately or by auction to satisfy any claims or liens at the appointed discharge port or other port.

**13. General Average and Salvage**
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the saving vessel or vessels belonged to strangers.

**14. Both-to-Blame Collision Clause (This clause to remain in force even if unenforceable in the Courts of the United States of America)**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**15. Government Directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any cargo on board to risk of seizure or damage or delay in consequence of war, warlike operations, blockade, riots, civil commotion or piracy, or any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts (whether on board or on shore), difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Defences and Limits of Liability for the Carrier, Servants, Agents and Managers**
(a) It is hereby expressly agreed that no servant, agent or manager of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant, agent or Manager of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant, agent or manager of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**17. Stowage**
(a) The Carrier shall have the right to stow by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**18. Packaging**
The Merchant is responsible for providing cargo that is properly packed and internally secured for ocean transportation, and that all centres of gravity are marked, proper skids are attached and if required, all cradles used for securing the cargo are fit for the purpose and the cargo is properly secured within the cradles. The Merchant shall fit the cargo and/or cradles as appropriate with suitable lifting lugs and sufficient lashing points for the cargo and/or cradle to be properly secured. If cargo is not flat at the bottom, the Merchant is to provide a detailed footprint sketch prior to loading. Any special dunnaging is to be for the Merchant's account.

**19. Shipper-Packed Containers, Trailers, Transportable Tanks, Flats, Pallets and similar articles**
The Carrier shall not be responsible for loss of or damage to contents of a container whatsoever when the container has not been filled, packed or stowed by the Carrier. The Merchant shall cover any loss, damage or expense incurred by the Carrier when caused by negligent filling, packing or stowing of the container or the contents being unsuitable for carriage in a container. The same applies with respect of trailers, tanks, flats, pallets and other similar articles of transport used to consolidate goods.

**SPECIAL CLAUSES**

**A. Detention**
In addition to Clauses 10(d) and (e), detention shall also be paid, at the same rate, for any delay in waiting for berth at or off the port, including time lost due to swell or tide. Each Merchant shall be liable towards the Carrier for a proportionate part of the total detention due based upon its total payable freight on the cargo.
No Merchant shall be liable for detention arising only in connection with cargo belonging to other Merchant.

**B. U.S. Trade. Period of Responsibility**
(i) In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading, and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody. For US trades, the tariffs on file with the U.S. Federal Maritime Commission shall apply to such shipments.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit.

**C. US Security Clause**
If the vessel calls in the United States, including any US territory, the following provisions shall apply with respect to any applicable regulations or measures:
Unless caused by the Carrier's negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant US authorities shall count as time of detention.
Any expenses or additional fees relating to the cargo, even if levied against the vessel, that arise out of security measures imposed at the loading and/or discharging port shall be for the Merchants' account





**MARCONS MARITIME PVT. LTD.**
61 McLEOD STREET – KOLKATA 700017
PHONE(S): +91 33 2229-2038/ 8203/ 5035
FAX: +91 33 2217-4287

## STATEMENTS OF FACTS

**M.V."CEC CENTURY"** – DISCHARGED PROJECT CARGO AT HALDIA – SHANGHAI, SINGAPORE / HALDIA - SUBJECT TO TERMS, CONDITIONS AND EXCEPTIONS OF THE RELEVANT CHARTER PARTY.

| | |
|---|---|
| NAME OF THE VESSEL | : M.V."CEC CENTURY" |
| NAME OF THE RECEIVERS | : M/S. AHLERS INDIA PVT. LTD.<br>1/1 CAMAC STREET<br>5TH FLOOR, SUITE 503,<br>IN-700016 KOLKATTA, INDIA. |
| PORT OF LOADING | : SHANGHAI AND SINGAPORE |
| PORT OF DISCHARGE | : HALDIA, INDIA |
| VESSEL ARRIVED AND REPORTED PILOT STATION | : AT 1925 HRS./30.09.2007 |
| DROPPED ANCHOR | : AT 1925 HRS./30.09.2007 |
| ANCHOR AWEIGH | : AT 1420 HRS./08.10.2007 |
| RIVER PILOT ON BOARD | : AT 1915 HRS./08.10.2007 |
| FREE PRATIQUE GRANTED | : AT 1915 HRS./08.10.2007 |
| VESSEL ARRIVED LOCK GATE | : AT 0120 HRS./09.10.2007 |
| VESSEL LEFT LOCK GATE | : AT 0210 HRS./09.10.2007 |
| FIRST LINE ASHORE (AT BERTH NO.12) | : AT 0250 HRS./09.10.2007 |
| ALL MADEFAST AT BERTH NO.12 (DISCH BERTH) | : AT 0310 HRS./09.10.2007 |
| GANGWAY PLACED | : AT 0315 HRS./09.10.2007 |
| 'N O R' TENDERED UPON THE RECEIVERS | : AT 1925 HRS./30.09.2007 |
| 'N O R' ACCEPTED | : RECEIVERS DENIED TO SIGN/ ACCEPT |
| NO. OF HOLDS AND HATCHES OFFERED ON ARRIVAL | : 1 HOLD / 1 HATCH (BOX TYPE VESSEL) |
| NO. OF CRANES AND THEIR CAPACITY | : 2 NOS. X 200 M.TONS MAX |
| VESSEL COMMENCED DISCHARGING | : AT 0515 HRS./ 09.10.2007 |
| VESSEL COMPLED DISCHARGING | : AT 1715 HRS./11.10.2007 |
| TOTAL CARGO DISCHARGED | : 36 PACKAGES (ACCORDING TO THE BS/L) |

PORT WORKING HOURS:

| | | |
|---|---|---|
| 1ST SHIFT | FROM 0600 HRS TO 1400 HRS | RECESS 1000 HRS TO 1030 HRS. |
| 2ND SHIFT | FROM 1400 HRS TO 2200 HRS | RECESS 1800 HRS TO 1830 HRS. |
| 3RD SHIFT | FROM 2200 HRS TO 0600 HRS | RECESS 0200 HRS TO 0230 HRS. |

| R.O.B ON ARRIVAL | R.O.B ON COMPLETION |
|---|---|
| IFO = 519.1 MT | IFO = 519.1 MT |
| D.O = 63.1 MT | MGO = 55.60 MT |
| F.W. = 28.0 MT | F.W. = 18.0 MT |
| LUB OIL = 13510 LTRS | LUB OIL = 13510 LTRS |

CONTD......2.

EXHIBIT "4"

MARCONS MARITIME PVT. LTD.
61 McLEOD STREET – KOLKATA 700017
PHONE(S): +91 33 2229-2038/ 8203/ 5035
FAX: +91 33 2217-4287

[PAGE 2]

| ARRIVAL DRAUGHT (FRESH WATER) | SAILING DRAUGHT (FRESH WATER) |
|---|---|
| FWD = 5·4 M / AFT = 6·5 M | FWD = 5·2 M / AFT = 5·8 M |

DELAYS AND DETENTIONS: AS PER STEVEDORES' DAILY DISCHARGE REPORT, WHICH ARE ATTACHED HEREWITH AND ACCORDING TO THE STATEMENTS OF FACTS PREPARED BY THE MASTER

MASTER'S REMARKS:

For receipt only. Subject of charter/owner approval.

OWNERS' AGENTS REMARKS:

1) RECEIVERS / THEIR AGENTS REFUSED TO ACCEPT/ SIGN THE 'NOR' AND OTHER PAPERS/ DOCUMENTS ON COMPLETION OF CARGO OPERTION.
2) ALL DELAYS AND DETENTIONS SHOULD BE COUNTED ACCORDING TO THE STEVEDORES' DAILY DISCHARGE REPORT WHICH IS DULY SIGNED BY THE CHIEF OFFICER AND THE SAME IS ATTACHED HEREWITH.

SIGNED SUBJECT TO TERMS, CONDITIONS AND EXCEPTIONS OF THE RELEVANT CHARTER PARTY.

MASTER
MV 'CEC CENTURY'

M/V CEC CENTURY
C6S-2075
NASSAU

MARCONS MARITIME PVT. LTD.
AS AGENTS.



Praxair

**Asia Project Services Ltd.**

c/o Asia Project Chartering Pte. Ltd.
70 Shenton Way
Marina House Unit 14-01
Singapore 079118
Phone: +65 6324 3301
Fax: +65 6324 3302
www.apchartering.com

Date 15 November 2007
No. Draft

# Invoice

m.v. CEC Century - C/P 31 August 2007

| | USD |
|---|---|
| Detention at Haldia 7.788 days @ usd 17,500.- | 136,290.00 |
| | 0.00 |
| Balance in Owners favour | 136,290.00 |

E.& O.E.

EXHIBIT "5"

We ask you kindly to transfer above balance with value 1 October 2007 to:

Nordea Bank Danmark A/S
Strandstræde 3
Postboks 850
DK-0900 Copenhagen C
Denmark
Swift Code: NDEADKKK
Bank Branch No: 2149
Account No: 2149-5036065968
Iban No: DK7120005036065968
Beneficiary: Asia Project Services Ltd.
Reference: CEC Century - Com 556 - F000037 - Client 8098

Yours faithfully
Asia Project Chartering Pte Ltd.
(as agents only)

Olga Lugovskaja